Leſſee of FREDERICK MERCHANT & PETER BRIGHT
v. JACOB MILLIRON's Executors.

1793.  THIS was an ejectment for 250 acres of land.

The plaintiff's title was a warrant to *Merchant* and *Bright*, for 250 acres of land on the waters of *Big Sawickly*, adjoining land of *Jacob Milliron*, &c. dated 10th *February*, 1786; a ſurvey of 268 acres and 155 perches, and allowance, made 12th *April*, 1786; and a patent 27th *October*, 1787.

The defendant alſo ſhewed a warrant in name of *Jacob Milliron*, in truſt for the heirs of his father, dated 23d *Auguſt*, 1786, for 200 acres; a ſurvey on 12th *September*, 1786, of 220¾ acres; and a patent 12th *October*, 1786.

It appeared in evidence, that, upwards of twenty years ago, *Jacob Milliron* bought from *William Thomſon* his claim to a certain tract of land. *Thomſon*, who was ſurveyor of the diſtrict, ſurveyed it. And there was no other claim to it; nor was there any diſpute with any of the neighbours about the boundaries. In *March*, 1780, *Milliron* had a houſe, a barn, and ſixty acres of land cleared on it. On 4th *December*, 1784, *Milliron*, who had ſeveral ſons, got two warrants (one in the name of one of his ſons) of 300 acres each, charging intereſt from *March*, 1780. On theſe he had his whole claim ſurveyed on 26th *April*, 1785. This ſurvey was found to contain 900 acres. The ſurveyor told the *Millirons*, that he could not return ſo much on their two warrants, and they muſt get another for the reſidue. He returned more than 300 acres on each, and run a line, by their directions, dividing the returned land from that not returned. This line was within 50, or 60 perches of *Milliron's* houſe, and cut off a ſmall part of his meadow, and a piece of good bottom land, ſuch as would be choſen as part of the place. *Merchant* and *Bright* never had any claim to any part of *Milliron's* claim, till they took out their warrant. And the ſurveyor never went on the land after the date of their warrant, but returned their ſurvey, from the plat he had made for the *Millirons*. The plaintiff's warrant,

and *Milliron's* warrant of 23d *August*, 1786, were both
for the land in *Milliron's* claim not returned on the
two firft warrants; and this was the land in difpute.

*Brackenridge* and *Galbraith*, were for the plaintiff.—
*Rofs* and *Young*, for the defendant.

*Brackenridge* objected to the reading of *Milliron's* two
firft warrants, becaufe it had been proved, that they
were laid on other ground; and to any evidence of his
improvements, unlefs they were within the difputed
ground.

PRESIDENT. The defendants may controvert the
proof of the warrants being laid on other ground, we
cannot prevent their attempting it, the jury will judge.
Let teftimony alfo be admitted to fhew where the im-
provements named in the warrant are, whether within
or without the difputed lines, and how near them; that
from their proximity or diftance, with refpect to the
difputed lines, the intention of the *Millirons* expreffed
in the warrants, may be known, as to what ground is
included in the warrants, whether the difputed land or
not.

*Rofs.* The land-office will receive returns of furvey
to the extent of 400 acres and allowance, and even up-
wards, though the warrants call but for 100 acres: and
the claimant will obtain a patent for the whole. But
if lefs has been returned, and a fpeculator fteps in, and
takes the furplus of a fair claim, he has committed a
fault, and will you not lay hold of the flighteft circum-
ftance, to defeat him. The 9th fection of the act of 8th 2 *St. L.* 316.
*April*, 1785, makes void every furvey made before the war-
rant comes into the hands of the deputy furveyor, or with-
out going on the ground. The plaintiff's furvey is there-
fore void, as the furveyor never was on the land, after
the date of the warrant. Of courfe the patent is void.

*Brackenridge.* The original ideas in this country,
fupported by the habits of thinking Eaft of the moun-
tains, and the opinions of courts and juries here, made
it long be confidered as the law of the land, that an
actual fettlement gave a title. But when the judges of
the Supreme court came here, this doctrine was over-
fet; and the law is now fettled otherwife. Until thofe
decifions of the judges of the Supreme court, our legif-

lators never thought of any precaution, to protect settlements against titles; because they thought it as impossible, that they could be hurt, as that the winds could sweep away the mountains. In the end of the year 1786, I brought forward the law, which has ever since been continued in force, to protect settlements. I consulted the judges, to know whether they would permit evidence of improvement against title. They said no: our system is otherwise. The earliest title must hold. But this is not a case of settlement. It is not a claim of 300 acres, but of 900, three times a reasonable claim.

PRESIDENT. The full extent of the claim of old *Milliron*, an early settler in this country, is but a reasonable provision for himself and his family of sons; and ought to be protected if possible. The disputed land is contiguous to the house, and such as would naturally be chosen as part of the place. If the plaintiff's survey had been regular, we should have thought ourselves bound by former decisions, to say, that the title is in the plaintiff. But, as the survey is void, you may perhaps consider yourselves as standing in the situation of the board of property; and give such decision by your verdict, as the board would have given, if the case had come before them.

The jury found a verdict for the defendant.

NOTE.—I have since understood, that it has been decided, by the judges of the Supreme court, that the act of 8th *April*, 1785, extends only to the *new purchase*, the land proposed by that law to be sold. If so, the point, on which this case was put to the jury, was wrong. But it has since been determined by judges of the Supreme court, that, under the act of 26th *March*, 1785, and other acts giving sanction to improvements or settlements, evidence of improvements or settlements, without office titles, might be given. And in the case of *Wells v. Wright*, in *Washington* county, at a court of Nisi Prius in *May*, 1793, it was held, that a warrant taken out by one man, for the actual settlement of another, before the law of *December*, 1786, was void.